UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS<br>TECHNOLOGIES, LLC, | § <br> § <br> § | |
| Plaintiff, | § <br> § | Case No. 2:13-cv-886-JRG-RSP |
| v. | § <br> § | JURY TRIAL REQUESTED |
| T-MOBILE USA, INC. AND<br>T-MOBILE US, INC., | § <br> § <br> § | |
| Defendants. | § | |

**MTEL'S REPLY CLAIM CONSTRUCTION BRIEF**

Case 2:13-cv-00886-JRG-RSP   Document 64   Filed 10/07/14   Page 2 of 15 PageID #:  848

## <u>TABLE OF CONTENTS</u>

I.  DISPUTED CLAIM TERMS ........................................................................................... 1

    A.  The '403 and '210 Patents ................................................................................ 1

        1.  "transmitter[s]" / "base transmitter[s]" ................................................ 1

        2.  "set[s] of transmitters"/"set of base transmitters" ........................................ 2

        3.  "transmitting/transmitted/transmit in simulcast" ........................................ 3

        4.  "block of information" ........................................................................ 4

    B.  The '891 Patent ............................................................................................ 4

        1.  "single mask-defined, bandlimited channel" ........................................... 4

        2.  "independently receiving one of said plurality of carriers" ...................... 6

        3.  "paging carriers" / "modulated carriers" ................................................ 7

        4.  "same location" ................................................................................. 7

        5.  "subchannel(s)" ................................................................................. 8

        6.  "spaced within the mask" .................................................................... 8

        7.  preamble ........................................................................................... 9

II.  ALLEGEDLY INDEFINITE TERMS ........................................................................ 9

III.  CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

FEDERAL CASES                                                              **Page(s)**

*Cohesive Techs., Inc. v. Waters Corp.*,
    543 F.3d 1351 (Fed. Cir. 2008) ...................................................................1

*DeGeorge v. Bernier*,
    768 F.2d 1318 (Fed. Cir. 1985)...................................................................9

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    243 F. Supp. 2d 31 (S.D.N.Y. 2003) aff'd by 363 F.3d 1263 (Fed. Cir. 2004)........................3

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
    616 F.3d 1357 (Fed. Cir. 2010)...................................................................5

*GPNE Corp. v Apple, Inc.*,
    12-CV-02885-LHK (April 9, 2014, N.D. Cal.) ...................................................6

*Graco Children's Prods., Inc. v. Regalo Int'l*,
    77 F. Supp. 2d 660 (E.D. Pa. 1999) .............................................................3

*Honeywell Int'l, Inc. v. ITT Indus.*,
    452 F.3d 1312 (Fed. Cir. 2006)...................................................................6

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
    147 F. Supp. 2d 464 (W.D. Va. 2001) ...........................................................3

*Mobile Telecommunications Technologies, LLC v. Apple Inc.*,
    2:12-cv-832-JRG- RSP, Dkt. No.162 (May 2, 2014) ...........................................2

*Mobile Telecommunications Technologies, LLC v. Clearwire Corp.*,
    No. 2:12-cv-308-JRG- RSP, 2013 WL 3339050, Dkt. No. 72 (E.D. Tex. July
    1, 2013) .................................................................................1, 2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)...........................................................................10

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)...................................................................7

*Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd.*,
    599 F.3d 1309 (Fed. Cir. 2010)...................................................................2

*Sandisk Corp. v. Memorex Products*,
    415 F.3d 1278 (Fed. Cir. 2005).............................................................1, 4, 7

*VirnetX Inc. v. Cisco Sys.*,
 2012 U.S. Dist. LEXIS 183974 (E.D. Tex. Apr. 25, 2012) .......................................................1

**REGULATIONS**

47 C.F.R. § 22.2 (1994) ...................................................................................................................6

## I.     DISPUTED CLAIM TERMS

T-Mobile improperly attempts repeatedly to import details of the preferred embodiments or the background of the invention into the claims.[1]  T-Mobile's repetitive theme is that a dispute exists simply because MTel disagrees with T-Mobile's improperly limiting claim constructions. If this was enough to create a claim scope dispute, no term would ever be construed as "plain meaning" and the *O2 Micro* doctrine would have no place in claim construction.

### A.     The '403 and '210 Patents

#### 1.     "transmitter[s]" / "base transmitter[s]"

T-Mobile's proposal incorporates dictum from the *MTel/Clearwire*[2] claim construction order.   The specific dictum T-Mobile references concerns a dispute that does not exist here: whether a single transmitter can transmit in simulcast with itself.  This is not only improper and prejudicial, but also not relevant to this case.   All parties here acknowledge that simulcasting requires two or more transmitters.  The Federal Circuit has held that dictum of a prior case which "involved a different dispute concerning the claim terms" has no bearing on construction of the term absent that dispute.[3]  T-Mobile's proposal should therefore be rejected.

T-Mobile cites *VirnetX*[4] for the proposition that former dictum may sometimes be incorporated into a later formal construction.[5]  As T-Mobile well knows,[6] in *VirnetX*, incorporation of former dictum was appropriate because, and only because, the same dispute was raised again.[7] Since no dispute exists here regarding whether a single transmitter can simulcast with itself, formal incorporation of the *Clearwire* dictum is inappropriate in this case.

---

[1]     *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367-68 (Fed. Cir. 2008).
[2]     Claim Construction Order from *Mobile Telecommunications Technologies, LLC v. Clearwire Corp.*, No. 2:12-cv-308-JRG- RSP, 2013 WL 3339050, Dkt. No. 72 (E.D. Tex. July 1, 2003) ("Clearwire Order").
[3]     *Sandisk Corp. v. Memorex Products*, 415 F.3d 1278, 1290-1291 (Fed. Cir. 2005).
[4]     *VirnetX Inc. v. Cisco Sys.*, 2012 U.S. Dist. LEXIS 183974 (E.D. Tex. Apr. 25, 2012).
[5]     T-Mobile's Responsive Claim Construction Brief (Dkt. 62) at 7 ("T-Mobile Response").
[6]     Counsel for T-Mobile represented VirnetX Inc. on the other side of the very issue T-Mobile now raises.
[7]     2012 U.S. Dist. LEXIS 183974 at *13 (E.D. Tex. Apr. 25, 2012) ("Just as in *Microsoft*, the parties here dispute whether a virtual private network requires anonymity …").

T-Mobile further misrepresents this Court's holding in the prior *MTel v. Apple* case, MTel's position in that case, as well as MTel's position in this case. In *Apple*, this Court held:

> The Court therefore hereby construes "**transmitter**[s]" and "**base transmitter**[s]" to have their **plain meaning**. The Court further hereby adopts the above-quoted conclusions reached in Clearwire and orders that at trial the parties shall not present any arguments inconsistent with those conclusions.[8]

In dictum, the Court referenced various arguments made by MTel and Clearwire. T-Mobile now chooses only one of these to include in the construction of this term. T-Mobile provides no reason why the construction should not be further qualified with the remaining arguments presented. If this Court were inclined to include all of this prior briefing and argument into a formal construction, all such prior dicta should be included too, such as "with the understanding that the Court rejected Clearwire's argument that a 'transmitter' must be spatially separated or geographically dispersed from other transmitters."[9]

T-Mobile has now further changed its proposed construction[10] in an overt attempt to inject explicit bias against MTel. Insertion of the phrase "*the Court has rejected MTel's implication*" into the claim construction that will be provided to the Jury would be highly prejudicial. Inserting this phrase is not a formal construction providing meaning that could be read to the jury at trial without undue prejudice or confusion.

### 2. "set[s] of transmitters"/"set of base transmitters"

The Federal Circuit recognizes, that "district courts may engage in a rolling claim construction, which the court revisits" and that the Court may "alter[] its interpretation of the claim terms as its understanding of the technology evolves."[11] Thus, this Court may revisit its

---

[8] Claim Construction Order from *Mobile Telecommunications Technologies, LLC v. Apple Inc.*, Civil Action No. 2:12-cv-832-JRG- RSP, Dkt. No. 162 ("Apple Order") at 10 (emphasis in original).

[9] Clearwire Order at 9.

[10] P. R. 4-3 Joint Claim Construction & Prehearing Statement (Dkt. No. 54), Exhibit B (indicating that T-Mobile's proposed construction for this term does not include the negative language "the Court has rejected MTel's implication").

[11] *See, e.g., Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1309, 1315-1316 (Fed. Cir. 2010).

own construction at any time.  Justice requires revisiting the construction of this term because the previous construction excludes a preferred embodiment.  The Court's prior constructions turned on the plurality of the word "transmitters."  But grammatical formalism should not trump preferred embodiment disclosure in the specification.  The plural object of a prepositional phrase does not always indicate two or more; for example, a "pair of pants" is only one.

T-Mobile argues incorrectly that MTel is collaterally estopped from re-litigating this construction, but T-Mobile does not address the elements of collateral estoppel in the case law it cites.[12]  Collateral estoppel does not apply because the prior case settled, and *Markman* rulings from settled cases are not final and hence not entitled to preclusive effect.[13]  Furthermore, MTel has consistently maintained the construction proposed here throughout the prior cases.

### 3.    "transmitting/transmitted/transmit in simulcast"

This Court previously deliberately "distinguished between transmitting the same *information* and transmitting the same *signals*."[14]  T-Mobile now argues a construction that blurs this distinction.  Including references to both "the same information" and "the same information signal" would mislead a jury into requiring that the same information *and* the same signal are being transmitted at the same time, which would effectively undue the Patent's distinction—recognized by this Court—between *information* and *signal*.  This difference is also explicitly expressed in the claim language.  Claim 1 refers to the information signal as being transmitted *to* the transmitters, not from them.[15]  The sets of transmitters then transmit "information" in

---

[12]   Collateral estoppel requires:  (1) identical issues that were (2) actually litigated & decided; (3) full and fair opp. to litigate the issues; and (4) resolution was necessary for valid and final judgment.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 243 F. Supp. 2d 31, 35 (S.D.N.Y. 2003) aff'd. by 363 F.3d 1263 (Fed. Cir. 2004).

[13]   *See e.g., Graco Children's Prods., Inc. v. Regalo Int'l*, 77 F. Supp. 2d 660 (E.D. Pa. 1999); *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464 (W.D. Va. 2001).

[14]   T-Mobile Response Brief at 11 (emphasis in original).

[15]   '403 Patent at 33:20-22 (Claim 1, Element (a)).

simulcast.[16]  This Court's prior construction captures the essence of this distinction.

Additionally, the limitation of "a plurality of carrier signals" is simply not present in many claims including this claim term.  Referring to "carrier signals" is inappropriate because it would add a new limitation—even a new concept—to at least Claim 1 of the '403 Patent.  Likewise, since the claims of the '210 Patent explicitly define the plurality of carriers, including this phrase in the construction is superfluous and confusing.  Finally, T-Mobile argues its construction is necessary to resolve a phantom dispute regarding whether "a single transmitter can operate in simulcast with itself."  There is no actual dispute between the parties on this point, as noted above.  The Court need not contort a claim's construction to address a claim scope dispute that does not exist.[17]

### 4. "block of information"

T-Mobile agrees that the Court should afford this term its plain and ordinary meaning.[18]

### B. The '891 Patent

### 1. "single mask-defined, bandlimited channel"

Contrary to T-Mobile's responsive brief, and as indicated in MTel's Opening Brief,[19] MTel agrees with this Court's prior construction as "a channel confined to a frequency range."[20] T-Mobile proposes to add the limitation of "meeting the FCC paging requirements," even though the '891 patent does not claim any such FCC paging requirements and nothing in the prosecution history suggests any disavowal of a broader scope consistent with the words actually defining the claim.  Adding this limitation would require further inquiry into the scope of these purported

---

[16]   '403 Patent at 33:20-22 (Claim 1, Element (c)).
[17]   *Phillips*, 415 F.3d at 1312-1313.
[18]   T-Mobile Responsive Brief at pg. 5, footnote 2 (T-Mobile drops its proposed construction in favor of "plain meaning"); as stated in MTel's Opening Brief, plain meaning is consistent with '403 Patent at 5:20-21; 10:23-25.
[19]   MTel Opening Brief at 16.
[20]   MTel originally proposed that construction of this term is not necessary, but given T-Mobile's disagreement, MTel agrees with the Court's prior construction, as indicated in its Opening Brief.

FCC radio frequency regulations by the Court and possibly the jury.[21]  To be sure, the FCC is not mentioned in any of the claims of the '891 Patent, and the patent specification—while explaining the background of the invention in relation to FCC requirements—carefully avoids importing any regulatory limitation into the claimed invention.  This makes sense; a patent could not issue that was purporting to claim already known and published FCC licensing requirements.  While the patent explains the background of the related technology in context of FCC regulated radio channels, including for paging use, all the references T-Mobile cites are in the "Discussion of Related Art" section.[22]  However, in the "Detailed Description of the Preferred Embodiments,"[23] the only reference to paging is in the description of one of the preferred embodiments, which the specification clarifies is "purely exemplary."[24]

Notably, in the discussion in the patent, the FCC requirements regarding channel masks are not limited to the "paging requirements" T-Mobile attempts to import into the claims, and indeed, all references to FCC requirements cited by T-Mobile lack the *paging* limitation: "FCC emission limits,"[25] "FCC mask requirements,"[26] "FCC emissions mask,"[27] or "FCC regulations for emissions masks."[28]  The same is true for the remaining citations.[29]  T-Mobile further mischaracterizes the reference patentees cited to the USPTO during prosecution.  T-Mobile cites that "Fig. 4 of the application is *a representative illustration and is not the only possible representation* of an emissions mask defined by those regulations,"[30] and that "47 CFR § 22

---

[21]  *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1366 (Fed. Cir. 2010) ("The criterion is whether the explanation aids the court and the jury in understanding the term as it is used in the claimed invention.").
[22]  T-Mobile Response Brief at 13, citing '891 Patent at 1:11-14; 1:22-24; 1:39-46; 1:57-64.
[23]  '891 Patent at 3:36, 37.
[24]  *Id.* at 4:53-55.
[25]  *Id.* at 4:41-46.
[26]  *Id.* at 5:15-19.
[27]  *Id.* at 3:16-17, Fig. 4.
[28]  *Id.* at Abstract.
[29]  *Id.* at 4:12-15; 4:47-49; 4:49-53; 4:61-63; 5:15-19.
[30]  T-Mobile Response Brief, Ex. 10 ('891 Prosecution History at MTEL1301796-98).

applies to 'portions of the spectrum [] made available for domestic common carrier radio communications'" but omits that a "communications common carrier" is defined as "any person engaged in rendering communication services for hire to the public."[31]  This definition is not limited to paging services, and patentee's statement that Fig. 4 is an example of "*those* FCC regulations" implies only that other examples may draw on *other* FCC regulations.

As other courts have recognized, technologies relevant to paging services and today's more commonly known commercial radio services for data communications, such as LTE, are not technically incompatible or mutually exclusive but rather complimentary and iterative concepts in the communications arts.[32]

The case T-Mobile cites in support, *Honeywell*, held that the invention was a fuel filter in light of the specification repeatedly referring to the invention as a fuel filter.[33]  Unlike in *Honeywell*, the '891 patent does not refer to the invention as "a channel confined to a frequency range meeting the FCC paging requirements."  Here, the claims' references to a "single mask-defined bandlimited channel" merely provides context in which the novel aspect of the invention—the carrier spacing—is detailed.

### 2.    "independently receiving one of said plurality of carriers"

T-Mobile invites this court to add the limitation "<u>only</u>" into the claim language, while implicitly acknowledging that the plain and ordinary meaning of this claim term addresses only whether one carrier is received without requiring that other carriers are not received.[34]  T-Mobile cites to original Claim 5, even though that claim was not actually issued.  In regard to cancelled Claim 5, the patentee distinguished Chang because the invention requires "a plurality of mobile

---

[31]   T-Mobile Response Brief, Ex. 12 (47 C.F.R. § 22.2 (1994)).
[32]   *See, e.g., GPNE Corp. v Apple, Inc.*, 12-CV-02885-LHK (April 9, 2014, N.D. Cal.) (denying motion for summary judgment as to the infringement of certain paging patents by Apple's smartphone and iPad devices).
[33]   *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006).
[34]   T-Mobile Responsive Brief at 15.

receiving units independently receiving one of said plurality of carriers" while Chang "does not involve the simultaneous receipt of multiplexed orthogonal carriers <u>over a simple transmission line</u>."[35]   Chang therefore necessarily requires receipt of the entire frequency spectrum of all channels while the '891 Patent claims that a plurality of mobile receiving units may independently receive a subcarrier.

Disavowal of claim scope based on prosecution history requires "clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection."[36] Here, nothing in the prosecution history provides such an unequivocal disavowal, even if the claim being referenced had been allowed.[37]

### 3.      "paging carriers" / "modulated carriers"

Since the specification of the '891 Patent does not contain <u>any</u> discussion regarding orthogonally multiplexed subcarriers, T-Mobile's argument rests solely on a statement during prosecution that Patentee's method "does not involve the <u>simultaneous receipt</u> of <u>multiplexed orthogonal carriers</u> over a <u>transmission line</u>."[38]   This language from the prosecution history is open to at least three reasonable interpretations of differences:  (1) simultaneous receipt of carriers; (2) transmission of multiplexed orthogonal carriers; or (3) transmission via a transmission line. T-Mobile has simply chosen the interpretation that best suits its case.  This is insufficient for the unequivocal disavowal of claim scope required for the application of prosecution history estoppel.

### 4.      "same location"

MTel proposes that the term "same location" does not require construction.  This Court

---

[35]   MTEL1301744 at MTEL1301819 (emphasis added).

[36]   *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("Where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender.").

[37]   *Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005).

[38]   T-Mobile Responsive Brief, Ex. 14 ('891 Prosecution History, 8/9/96 Response, MTEL1301813-20) at 818.

implicitly agreed with MTel by not construing the term in the MTel/Apple case.[39]  Regardless, T-Mobile hypothesizes, without support, that "transmitting a plurality of carriers using different antennas . . . would require more than 'a single mask-defined, bandlimited channel.'"[40]  This statement is unsupported and incorrect.  T-Mobile cites nothing to support that a plurality of carriers could not be transmitted in a single mask-defined, bandlimited channel using more than one antenna, or that multiple transmitters cannot transmit a plurality of carriers using multiple antennas and a single mask-defined, bandlimited channel.  T-Mobile also fails to address that its proposed construction would erase the difference in claim language between Claims 1 and 3 ("transmitting . . . from the same location") and Claim 5 ("emanated from the same transmission source.")  Since this term is neither complex nor confusing, there is no reason to construe the term "same location."  It should be given its plain and ordinary meaning.

### 5.    "subchannel(s)"

The term "subchannel" is commonly understood in the art and does not require construction. The claim language requires "at least two paging carriers each in a corresponding subchannel of a single mask-defined, bandlimited channel," and does not include any further limitation regarding the subchannels.  Likewise, T-Mobile's citation to the specification that "each carrier is traditionally confined to a sub-mask defining a subchannel internal to the channel," does not limit subchannels beyond noting that each carrier is *traditionally* confined as described.  T-Mobile's proposed inversion of the claim language—that each subchannel must correspond to exactly one single subcarrier—does not follow.[41]  The Court should apply plain and ordinary meaning.

### 6.    "spaced within the mask"

T-Mobile argues that this Court should disregard the absence of the term

---

[39] T-Mobile provides no factual support for its footnote-indefiniteness argument re: "same geographic location."
[40] T-Mobile Response Brief at 20.
[41] Notably, T-Mobile no longer cites the dictionary it listed in its disclosure of extrinsic support.

"asymmetrically" in Claim 5 despite the fact that it was explicitly dropped during prosecution, because "one of ordinary skill in the art . . . would conclude that issued Claim 5 requires carriers that are 'spaced asymmetrically within the mask.'"  However, T-Mobile provides no support for this assertion, and "unsworn attorney argument . . . is not evidence."[42]  Similarly, T-Mobile argues—again without support—that the examiner allowed issued Claim 5 only in reliance on the word "asymmetrically" being included.  Again, the absence of support renders this statement unpersuasive attorney argument.  Since the subcarrier spacing is well defined in the remainder of the asserted claims, the term "spaced within the mask" does not require further construction.

### 7.      preamble

The preamble language will not limit a claim if (a) it is only used to state a purpose or intended use for the invention and the claim body otherwise defines a structurally complete invention such that deletion of the preamble language does not affect the structure or steps of the claimed invention.  Likewise a preamble does not limit a claim if it merely extols benefits, features or intended uses of the claimed invention that are not "clearly and unmistakably relied on" as being patentably significant.[43]  For the reasons stated, the Preambles of Claims 1, 3, and 5 are not limiting.

## II.     ALLEGEDLY INDEFINITE TERMS

T-Mobile claims that the terms "said plurality of carriers can be emanated from the same transmission source" and "frequency difference between the center frequencies of each adjacent carrier" are indefinite.[44]  As stated in MTel's Opening Brief, regarding each of these terms, T-Mobile has failed to offer proof beyond mere attorney argument that the claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."

---

[42]   T-Mobile Responsive Brief at 24 (citing *Gemtron v. Saint-Gobain*, 572 F.3d 1371, 1380 (Fed. Cir. 2009)).
[43]   *DeGeorge v. Bernier*, 768 F.2d 1318, 1322 n.3 (Fed. Cir. 1985).
[44]   T-Mobile appears to have dropped its contention that the term "adjacent carriers overlap / adjacent subchannels overlap" is indefinite, as it does not address this term in its Responsive Claim Construction Brief.  MTel agrees.

Regarding the term "said plurality of carriers can be emanated from the same transmission source," T-Mobile complains that it is not clear whether the plurality of carriers "may be" or "must be" emanated from the same transmission source.  Without providing any support—or even arguing—that this language fails to inform one of skill in the art with reasonable certainty of the claim scope, T-Mobile's argument is limited that the phrase "can be" is indefinite as a matter of law.  No Court has held thus, and the case law T-Mobile cites is distinguishable.  Considering the pertinent claim limitation here, the purpose of teaching one of skill in the art as to the meaning of "co-locating said plurality of transmitters" is accomplished.

Regarding the term "frequency difference between the center frequencies of each adjacent carrier," T-Mobile argues that "*the public* would be confused on how to determine 'the frequency difference' between multiple asymmetrically-spaced channels."[45]  That is the wrong legal standard.  The pertinent question is whether *one of ordinary skill in the art* would understand the scope of the invention with reasonable certainty.[46]  Regardless, the claim language is clear on its face, and requires that the pertinent distance is "more than half the frequency difference between the center frequencies of *each adjacent carrier*."[47]

Finally, this Court should hold that the term "adjacent carriers overlap / adjacent subchannels overlap" is definite for the reasons articulated in MTel's Opening Brief.  T-Mobile, in apparent agreement, did not present an argument to the contrary.

## III.   CONCLUSION

For the reasons stated above, MTel's proposed constructions should be adopted in their entirety and T-Mobile's indefiniteness argument should be rejected.

---

[45]   T-Mobile Response Brief at 30.
[46]   *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014)
[47]   '891 Patent at 6:10-12; 6:22-24; and 6:42-44.

Dated:  October 7, 2014

Respectfully Submitted,

*/s/ Henning Schmidt*
Daniel R. Scardino
Texas State Bar No. 24033165
Craig S. Jepson
Texas State Bar No. 24061364
Henning Schmidt
Texas State Bar No. 24060569
Dustin L. Taylor
Texas State Bar No. 24088510
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622
dscardino@reedscardino.com
cjepson@reedscardino.com
hschmidt@reedscardino.com
dtaylor@reedscardino.com

Deron Dacus
Texas State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone & fax)
ddacus@dacusfirm.com

ATTORNEYS FOR PLAINTIFF
MOBILE TELECOMMUNICATIONS
TECHNOLOGIES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Henning Schmidt*
Henning Schmidt